**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHRISTOPHER YU, *on behalf of himself and those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>VERIZON COMMUNICATIONS INC., VERIZON NEW JERSEY INC., VERIZON WIRELESS SERVICES LLC, and CELLCO PARTNERSHIP,<br><br>Defendants. | Case No. 2:26-cv-01685 (BRM) (LDW)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendants Verizon Communications Inc., Verizon New Jersey Inc., Verizon Wireless Services LLC, and Cellco Partnership's (together, "Defendants") Motion to Compel Arbitration and Stay this Action ("Motion"). (ECF No. 9.) Plaintiff Christiopher Yu ("Plaintiff") filed an Opposition. (ECF No 17.) Defendants replied. (ECF No. 19.) Having reviewed and considered the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78(b), for the reasons set forth below and for good cause having been shown, Defendants' Motion is **DENIED WITHOUT PREJUDICE**.

# I. BACKGROUND

## A. Factual Background

Plaintiff brought this putative class action alleging an "unlawful and abusive practice of false advertisements for and misrepresentations about trade-in credits." (Compl. (ECF No. 1)[1] ¶ 1.) Specifically, Plaintiff alleges Verizon "enticed consumers to trade in their devices for a newer device with a promised trade-in credit over the period of 36 months" but ultimately never fulfilled the entirety of the credit. (*Id.* ¶¶ 1–2.) Plaintiff asserts he was impacted by this practice because he "was offered a[n] $800 trade-in credit over the course of 36-months to trade in his previous phone for a newer model," but he only received $440.00 of that credit. (*Id.* ¶ 1.)

On July 26, 2022, Plaintiff "placed an order through a Samsung website with the help of a Verizon digital assistant to trade in his previous phone for a Samsung Galaxy S22 Ultra 128 GB" ("Samsung Galaxy Phone"). (Compl. ¶ 20.) This purchase through the Samsung website included the "$800.00 promotional trade-in credit." (*Id.*) When Plaintiff bought the Samsung Galaxy Phone, a "Verizon live expert confirmed Plaintiff's account would reflect the $800.00 promotional trade-in credit." (*Id.* ¶ 21.) In that interaction, Plaintiff emphasized that the purchase of the Samsung Galaxy Phone "was being made through the Samsung.com website; however, the transaction required Plaintiff to insert his Verizon credentials, such as his log in information." (*Id.*)

On August 24, 2022, Plaintiff communicated with a Verizon representative who "informed him that his purchase was not eligible for the trade-in credit because he made the purchase through the Samsung website." (*Id.* ¶ 22; *see also* Ex. E to Compl. (ECF No. 1) at 71 ("[T]he new phone

[1] This Opinion refers to the allegations in the Complaint by paragraph number and the exhibits attached to the Complaint by ECF page number. Similarly, the Opinion refers to the ECF page numbers when citing to the declaration exhibits attached to Verizon's Motion and Reply. The Complaint is filed as an exhibit to the Notice of Removal and is found at pages 14 through 34 of ECF No. 1. The Complaint's attachments are found at pages 36 through 81 of ECF No. 1.

which you have purchased is a direct purchase from Samsung instead of Verizon.”).) Two days later, Plaintiff spoke with a different Verizon representative who told Plaintiff the credit would be applied. (*Id.* ¶ 23.) On October 13, 2022, however, a third Verizon representative instructed Plaintiff to call Verizon to address the issue. (*Id.* ¶ 24.)

Plaintiff maintains “Verizon requires its customers to abide by a wireless customer service agreement . . . that purport[s] to impose mandatory arbitration.” (*Id.* ¶¶ 8–9.) However, the Complaint neither references the terms of such an arbitration agreement nor attaches the terms as an exhibit. (*See generally* Compl.) Though, the Complaint does attach an “Installment Loan Agreement/Security Agreement,” which Plaintiff alleges is the “finance agreement” connected to the Samsung Galaxy Phone purchase. (Compl ¶ 22; Ex. C to Compl. (ECF No. 1) at 58–61.) That agreement does not appear to have a signature, and it redacts the borrower’s name while leaving a blank where an “Account Manager delegate(s)” would otherwise be listed. (Ex. C to Compl. at 58.)

**B. Verizon’s Proffered Arbitration Clauses**

Several contracts are attached as exhibits to Verizon’s Motion and Reply. A Verizon customer agreement dated March 16, 2022 (“2022 Customer Agreement”) contains the following arbitration clause:

> **YOU AND VERIZON BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT AS DISCUSSED BELOW**. . . . ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT, OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US, OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES, OR FROM OUR EFFORTS TO COLLECT AMOUNTS YOU MAY OWE US FOR SUCH PRODUCTS OR SERVICES, INCLUDING ANY DISPUTES YOU HAVE WITH OUR EMPLOYEES OR AGENTS, WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE

> AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB").

(Ex. D to Reply Ninete Decl. (ECF No. 19-1) at 13.) The 2022 Customer Agreement is incorporated by reference by an "Installment Loan Agreement/Security Agreement," which the parties refer to as a Device Payment Agreement, with a July 27, 2022 transaction date ("2022 Device Payment Agreement"). (Ex. B to Motion Ninete Decl. (ECF No. 9-2) at 15–19.) The 2022 Device Payment Agreement relates to the Samsung Galaxy Phone. (*See id.* at 15.) The 2022 Device Payment Agreement does not bear Plaintiff's name or any signature. (*See id.*) The "Borrower's Name" listed is an individual named Hon Sang Yu. (*Id.* at 15.)

The record also contains a Verizon customer agreement dated November 5, 2025 ("2025 Customer Agreement"). (Ex. A to Motion Ninete Decl. (ECF No. 9-2) at 6–13.) The 2025 Customer Agreement contains an arbitration clause providing:

> **YOU AND VERIZON BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT AS DISCUSSED BELOW**. Dispute means any dispute that in any way relates to or arises out of this Agreement. This includes, but is not limited to, any equipment, products and services you receive from us, any advertising for such products or services, or alleged personal injury or invasion of privacy relating to such products or services, and includes any disputes you have with our employees or agents.

(*Id.* at 10–11.) Unlike the 2022 Customer Agreement, the 2025 Customer Agreement also defines "disputes" to "include[] any dispute regarding the validity, enforceability, or scope of any portion of this Agreement (including the Agreement to arbitrate) unless otherwise provides in this Agreement." (*Id.* at 11.) The 2025 Customer Agreement is incorporated by reference by a Device Payment Agreement with a transaction date of July 23, 2025 ("2025 Device Payment Agreement"). (Ex. C to Motion Ninete Decl. (ECF No. 9-2) at 21–24.) The 2025 Device Payment Agreement relates to the purchase of a different phone, identified as an iPhone 16 Pro Max. (*See id.* at 21.)

The 2025 Device Payment Agreement lists the "Buyer's Name" as "HON SANG YU, the Verizon Wireless Account Owner, or if not the Buyer signing below his/her authorized Account Manager delegate(s): CHRISTOPHER YU," and it states it was "accepted by HON SANG YU." (*Id.* at 21, 24.)

### C. Procedural History

Verizon removed this action from the Superior Court of New Jersey, Law Division, Hudson County on February 19, 2026. (ECF No. 1.) On February 25, 2026, Verizon applied for a Clerk's Order extending the time for Verizon to answer, move, or otherwise respond to the Complaint through March 12, 2026 (ECF No. 5), which was granted on March 2, 2026 (March 2, 2026 Clerk's Text Order). On March 11, 2026, Magistrate Judge Leda Wettre approved a stipulation between the parties further extending the time to March 26, 2026. (ECF No. 8.) On March 26, 2026, Verizon filed the Motion. (ECF No. 9.) After multiple extensions of the deadlines for responsive briefing (*see* ECF Nos. 11, 13, 15), Plaintiff timely filed the Opposition on May 12, 2026 (ECF No. 17). Verizon filed the Reply on June 2, 2026. (ECF No. 19.)

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, "establishes a policy in favor of arbitration that requires the liberal reading of arbitration agreements and the resolution of any doubts in favor of arbitration." *S. Broward Hosp. Dist. v. Medquist, Inc.*, 258 F. App'x 466, 467 (3d Cir. 2007) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, (1983)). The FAA provides that a written provision "to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Decades ago, the Supreme Court discussed 9 U.S.C. § 2 as 'a congressional declaration of a liberal federal policy favoring arbitration agreements.'"

*White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 338 (3d Cir. 2023) (quoting *Moses*, 460 U.S. at 24). More recently, though, the Supreme Court explained "the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (quoting *Moses*, 460 U.S. at 24). Rather, this policy "is to make 'arbitration agreements as enforceable as other contracts, but not more so.'" *Id.* (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)). "Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind." *Id.*

When addressing a motion to compel arbitration, a federal court is "limited to a 'narrow scope' of inquiry." *Gay v. CreditInform*, 511 F.3d 369, 386 (3d Cir. 2007) (quoting *Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1997)); *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 399 (3d Cir. 2020). The Court may consider only narrow "gateway matters" that touch on the question of arbitrability, such as whether an arbitration agreement applies to a particular controversy, or whether the parties are bound by the arbitration clause. *Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*, 489 F.3d 580, 585 (3d Cir. 2007).

"[Q]uestions of arbitrability, including challenges to an arbitration agreement's validity, are presumed to be questions for judicial determination." *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (quoting *Quilloin v. Tenent HealthSystem Phila., Inc.*, 673 F.3d 221, 228 (3d Cir. 2012)). "In considering a motion to compel arbitration, a court must engage in a two-step analysis: it must determine first whether there is a valid agreement to arbitrate and, if so, whether the specific dispute falls within the scope of said agreement." *Thomas v. Jenny Craig, Inc.*, Civ. A. No. 10-2287, 2010 WL 3076861, at * 3 (D.N.J. Aug. 4, 2010) (citing *Century Indem.*

*Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009); *Salvadori v. Option One Mortg. Corp.*, 420 F. Supp. 2d 349, 356 (D.N.J. 2006)). "State contract principles apply in ascertaining whether the parties to an action have agreed to arbitrate." *Sarbak v. Citigroup Glob. Mkts., Inc.*, 354 F. Supp. 2d 531, 537 (D.N.J. 2004) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002)).

"Where arbitrability is apparent on the face of the complaint, a Rule 12(b)(6) standard of review should be applied to the motion to compel arbitration." *Sauberman v. Avis Rent a Car Sys., L.L.C.*, Civ. A. No. 17-756, 2017 WL 2312359, at *2 (D.N.J. May 26, 2017) (citing *Guidotti*, 716 F.3d at 774). However, the "Rule 12(b)(6) standard is inappropriate when either 'the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity' to establish on its face that the parties agreed to arbitrate" or when "the opposing party has come forth with reliable evidence that is more than a 'naked assertion . . . that it did not intend to be bound' by the arbitration agreement, even though on the face of the pleadings it appears that it did." *Guidotti*, 716 F.3d at 774. Rather, courts should use the Rule 56 summary judgment standard. *Id.* "Therefore, a court must first determine whether there is a genuine issue of material fact as to whether a valid arbitration agreement exists." *Jayasundera v. Macy's Logistics & Operations, Dep't of Hum. Res.*, Civ. A. No. 14-7455, 2015 WL 4623508, at *2 (D.N.J. Aug. 3, 2015). In making this determination, the party opposing arbitration receives "the benefit of all reasonable doubts and inferences that may arise." *Id.*

## III. Decision

The Court first determines which standard applies—Rule 12(b)(6) or Rule 56. If Rule 56 applies, the Court must decide whether the Motion should be considered without the opportunity for discovery.

The Third Circuit has articulated the Rule 12(b)(6) standard of review to be inappropriate only if "the complaint and its supporting documents are unclear regarding the agreement to arbitrate" or "the plaintiff has responded . . . with additional facts sufficient to place the agreement to arbitrate in issue." *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 319 (3d Cir. 2024) (quoting *Guidotti*, 716 F.3d at 776). Under such circumstances, if the plaintiff demonstrates the existence of a factual dispute requiring limited discovery on the issue of arbitrability, then the court must deny the motion to provide the parties with the opportunity to conduct same, after which the defendant may file a renewed motion to compel arbitration under Rule 56. *See id.* at 319–20. If no such factual dispute exists, then the court may consider the motion under Rule 56. *See id.* A naked assertion—an assertion without the support of reliable evidence—is insufficient to demonstrate the existence of a factual dispute requiring the court to deny a motion to compel arbitration and to allow the parties the opportunity to conduct limited discovery on the issue. *Guidotti*, 716 F.3d at 774; *accord Young*, 119 F.4th at 319.

Here, the existence of an arbitration agreement is not clear on the face of the Complaint. The Complaint does not attach an arbitration agreement as an exhibit (*see* ECF No. 1 at 36–81),[2] and the terms of an arbitration agreement are not contained in the Complaint (*see generally* Compl). Although Plaintiff broadly alleges "Verizon requires its customers to abide by a wireless customer service agreement" containing clauses "purport[ing] to impose mandatory arbitration," Plaintiff does not specify the terms of same or identify a specific arbitration clause he was a party

[2] As noted above, *see supra* Section I.B., Exhibit C to the Complaint is an "Installment Loan Agreement/Security Agreement" (Ex. C to Compl. at 58–61). This agreement does not appear to be signed, redacts the borrower's name, and does not identify an "Account Manager delegate(s)." (*See id.*) Although this agreement incorporates by reference the dispute resolution provisions in a Customer Agreement (presumably the 2022 Customer Agreement) including an arbitration agreement, the terms of said arbitration clause are not specified. (*See id.* at 59.)

to. (*Id.* ¶¶ 8–11.) Furthermore, the Complaint does not base its causes of action on the existence of an arbitration agreement. (*See id.* ¶¶ 40–124.) Therefore, the Court is required to consider the Motion under the Rule 56 standard of review. *See Earle v. BLST Sales, Marketing & Servicing, LLC*, Civ. A. No. 24-8983, 2025 WL 2170146, at *3 (D.N.J. July 31, 2025) ("Where a complaint does not plead or attach the relevant terms of an arbitration provision, courts apply a summary judgment standard.").

Having determined the summary judgment standard applies, the Court further finds, for the reasons set forth below, Plaintiff has demonstrated the existence of a factual dispute requiring limited discovery on the issue of arbitrability. In so deciding, the Court is mindful Plaintiff, as the party opposing arbitration, "is given the benefit of all reasonable doubts and inferences that may arise." *Berkelhammer v. ADP TotalSource Grp., Inc.*, 74 F.4th 115, 117 n.3 (3d Cir. 2023) (internal quotation marks omitted) (quoting *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009)).

Verizon argues the 2025 Customer Agreement, as incorporated by the 2025 Device Payment Agreement, contains the operative arbitration agreement. (ECF No. 19 at 1–2.) The 2025 Customer Agreement provides "disputes" will be resolved through arbitration, defining "disputes" as follows: "Dispute means any dispute that in any way relates to or arises out of *this* Agreement. . . . This also includes any dispute regarding the validity, enforceability, or scope of any portion of *this* Agreement (including the Agreement to arbitrate)." (Ex. A to Motion Ninete Decl. at 5–6 (emphasis added).) The 2025 Customer Agreement therefore only applies to disputes pertaining to that specific agreement. The phone Plaintiff alleges he purchased in this case was purchased in 2022 (Compl. ¶ 21), and therefore the dispute surrounding that transaction could not have related to a contract created years later.

That leaves the 2022 Customer Agreement, which Verizon admits was in place when Plaintiff purchased the Samsung Galaxy Phone in July 2022. (Reply Ninete Decl. (ECF No. 19-1) ¶ 3.) Verzion argues "[b]y accepting the [2022] Device Payment Agreement, Plaintiff reaffirmed his agreement to be bound by the [2022] Customer Agreement's terms, including its arbitration provision, and also expressly agreed to arbitrate any claims arising under the [2022] Device Payment Agreement." (ECF No. 9-1 at 8.) However, the agreement Verizon contends is the 2022 Device Payment Agreement does not contain Plaintiff's signature, or even his name. (*See* Ex. B to Motion Ninete Decl. at 15–19.) Indeed, the agreement is not signed at all—the signature lines are blank. (*Id.* at 18–19.) And the "Borrower's Name" listed is an individual named Hon Sang Yu, not Plaintiff. (*Id.* at 15.) Notably, this contrasts with what is provided for the "Buyer's Name" in the 2025 Device Payment Agreement, which states "HON SANG YU, the Verizon Wireless Account Owner, or if not the Buyer signing below his/her authorized Account Manager delegate(s): CHRISTOPHER YU." (Ex. C to Motion Ninete Decl. at 21.)

Moreover, adding to the uncertainty in the current record as to whether Plaintiff agreed to the 2022 Device Payment Agreement, and in turn the 2022 Customer Agreement, is a separate "Installment Loan Agreement/Security Agreement" attached to the Complaint, which Plaintiff alleges is the "finance agreement" connected to the Samsung Galaxy Phone purchase. (Compl ¶ 22.) That agreement, which also does not appear to have a signature, redacts the borrower's name and leaves blank whether there is an "Account Manager delegate(s)." (Ex. C to Compl. at 58.) It also has a transaction date that is one day apart from the transaction date on the 2022 Device Payment Agreement attached to Verizon's Motion. (*Compare id.* at 58, *with* Ex. B to Motion Ninete Decl. at 15.)

Plaintiff disputes that he agreed to any Verizon contract, alleging the relevant 2022 phone purchase involved Plaintiff "plac[ing] an order through the Samsung website with the help of a Verizon digital assistant." (Compl. ¶ 20.) Plaintiff argues he "did not activate a new phone line or take a direct account action through Verizon's platform." (ECF No. 17 at 28.) Instead, Plaintiff states he "purchased a phone through Samsung's website, logging in with Verizon credentials only to facilitate the Samsung transaction, and separately confirmed with a Verizon chat agent that his Samsung order would qualify for the $800 promotional credit." (*Id.* at 28–29.) Plaintiff asserts "there is no evidence in the record that . . . [Plaintiff] clicked through or agreed to any Verizon terms at any point during that process." (*Id.* at 29.) The Complaint also attaches a conversation between Plaintiff and a Verizon chat agent in which the chat agent states, "the new phone which you have purchased is a direct purchase from Samsung instead of Verizon." (Ex. E to Compl. at 71.)

Taken together, the above demonstrates sufficient factual disputes necessitating limited discovery into whether Plaintiff agreed to arbitrate claims against Verizon. *See, e.g.*, *Kear v. Love's Travel Stops & Country Stores, Inc.*, Civ. A. No. 25-210, 2026 WL 643149, at *2 (W.D. Pa. Mar. 9, 2026) (concluding "the appropriate course of action is to deny the [d]efendant's [m]otion to [c]ompel [a]rbitration and direct the parties to engage in limited discovery on the issue of whether the parties agreed to arbitrate" when the plaintiff argued he had no memory of signing the arbitration agreement, "the signature contains his full legal name which he generally does not use, and he has not been provided with a copy of the [a]rbitration [a]greement"); *Quinn v. Love's Travel Stops & Country Stores, Inc.*, Civ. A. No. 24-1856, 2025 WL 2550860, at *5 (M.D. Pa. Sept. 4, 2025) (finding "the evidence [was] inconclusive on the issue of arbitrability" when the plaintiff "ha[d] no recollection of signing the arbitration agreement" and the defendant's exhibits "lack[ed]

signatures" and ordering limited discovery because "the evidence is insufficient for the [c]ourt to determine whether there has been a meeting of the minds on the agreement to arbitrate" (citing *Young*, 119 F.4th at 320)).[3]

## IV. CONCLUSION

For the reasons set forth above, the Motion (ECF No. 9) is **DENIED WITHOUT PREJUDICE**. The parties are directed to engage in limited discovery as to arbitrability before Magistrate Judge Leda D. Wettre. An appropriate order follows.

***/s/ Brian R. Martinotti***
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: September 4, 2026

---

[3] Verizon argues "Plaintiff is also bound by the Customer Agreement's arbitration provision as an intended third-party beneficiary" (ECF No. 9-1 at 14–15), and Plaintiff is "equitably estopped from arguing he is not bound by the Device Payment Agreement he accepted in connection with [the relevant] purchase" (*id.* at 15–17). The Court rejects these arguments for the same reason as discussed above—additional discovery is necessary before determining the applicability of the third-party beneficiary and equitable estoppel doctrines. Under the doctrine of equitable estoppel, an arbitration clause may be enforced against a non-signatory if the non-signatory "knowingly exploit[s]" the agreement containing the clause. *See Brava Cap. Mgmt. Ltd. v. Champion Foods, Inc.*, Civ. A. No. 25-18290, 2026 WL 2444915, at *5 (D.N.J. Aug. 20, 2026) (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates S.A.S.*, 269 F.3d 187, 199 (3d Cir. 2001)). Under the third-party beneficiary doctrine, an arbitration clause may be enforced against a non-signatory if: (a) the non-signatory is a third-party beneficiary of the agreement containing the clause; and (b) the relevant claims arise out of that agreement. *See Sheth v. Artech LLC*, Civ. A. No. 25-1205, 2025 WL 1588021, at *3 (D.N.J. June 5, 2025) (citing *E.I. DuPont de Nemours & Co.*, 269 F.3d at 195). "[T]he intention of contracting parties to benefit an unnamed third party must be garnered from an examination of the contract and a consideration of the circumstances attendant to its execution." *Sahler v. Healthy Choice Markets IV, LLC*, Civ. A. No. 25-18798, 2026 WL 1649163, at *4 (D.N.J. June 8, 2026) (quoting *Reider Cmtys., Inc. v. Twp. of N. Brunswick*, 546 A.2d 563, 566 (N.J. Super. Ct. App. Div. 1988)). It may be that these doctrines ultimately apply. But without the requisite clarity in the record regarding whether Plaintiff entered into a contract with Verizon and if so, the terms of same, the prudent course of action is to decline to apply these doctrines at this juncture because both doctrines require the Court to examine the applicable contract.